UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 11-81-KSF

LM INSURANCE CORPORATION
and LIBERTY MUTUAL FIRE
INSURANCE COMPANY                                                              PLAINTIFFS


v.                                        **OPINION & ORDER**


CANAL INSURANCE COMPANY                                                     DEFENDANT


\* \* \* \* \* \* \* \*

The plaintiffs, LM Insurance Company ("LM") and Liberty Mutual Insurance Company ("Liberty Mutual")(collectively "Liberty Mutual"), filed this action for declaratory relief pursuant to 28 U.S.C. § 2201 *et seq.* and Rule 57 of the Federal Rules of Civil Procedure against the defendant, Canal Insurance Company ("Canal").  Specifically, Liberty Mutual seeks a ruling declaring the scope of Canal's duties respect to a lawsuit brought against Liberty Mutual and Canal's insured, Hinkle Contracting Corporation ("HCC"), in Bourbon Circuit Court, captioned *Pamela Henney, individually and as Executrix of the Estate of Charles Henney v. Hinkle Contracting Corporation, et al.*, Civil Action No. 09-CI-000325 (the "Henney action").  Currently before the Court are the parties' cross motions for summary judgment [DE ##19, 21].

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

The facts underlying this matter are not in dispute.  On May 25, 2006 HCC entered into a contract (the "Hauling Contract") with William Henderson, dba Henderson Trucking ("Henderson"),

1

to "provide hauling-trucking services as needed by HCC upon demand" [DE #19-3].  The Hauling Contract further provided that Henderson would carry automobile liability insurance in an amount not less than $1 million and would name HCC as an additional insured on a primary and non-contributory basis.  In addition, Henderson agreed to indemnify and hold harmless HCC to the fullest extent permitted by law for all liabilities, including defense costs and attorney's fees, "arising out of the work performed by Contractor [Henderson] under this agreement" [DE #19-3].

Canal subsequently issued a Business Auto insurance policy in Kentucky to Henderson, Policy Number PIA01501401, with a policy period of June 7, 2008 to June 7, 2009 (the "Canal Policy").  HCC was made an additional insured of the Canal Policy by way of a Designated Insured endorsement purchased by Henderson [DE #19-9].

HCC also maintained two insurance policies during the relevant time.  LM issued a commercial General Liability insurance policy to HCC, Policy Number TB5-151-288776-028, with a policy period April 1, 2008 to April 1, 2009 (the "LM CGL Policy") [DE #19-8].  Liberty Mutual issued a Business Auto policy to HCC, Policy Number AS2-151-288776-018, with a policy period of April 1, 2008 to April 1, 2009 (the "Liberty Mutual Auto Policy") [DE #19-7].

On October 30, 2008, Henderson was involved in an accident with Charles Henney while hauling materials for HCC pursuant to the Hauling Contract.  Henney died as a result of the accident. After the accident, Liberty Mutual and Canal exchanged correspondence, but apparently never reached a true agreement about coverage.  The Henney action was subsequently filed on October 28, 2009 in Bourbon Circuit Court [DE#1-1].

The Complaint in the Henney Action alleged, *inter alia*, six counts against Henderson, HCC, and other defendants.  In Count I, the plaintiff alleged that Henderson negligently and/or grossly

negligently operated his dump truck as an agent of HCC, and that HCC was vicariously liable for the acts of Henderson. In Count II, the plaintiff alleged that Henderson, with the knowledge of HCC, operated the dump truck while it was overloaded, and that HCC was vicariously liable for the acts of Henderson. In Count IV, the plaintiff alleged that HCC negligently and/or knowingly overloaded Henderson's dump truck, which contributed to the accident. Count V alleged that all of the defendants engaged in knowing and/or grossly negligent conduct in overseeing Henderson's dump truck, entitling the plaintiff to punitive damages. Finally, in Counts VII and VIII, the plaintiff alleged that all of the defendants engaged in a joint enterprise or a conspiracy to overload dump trucks.

Liberty Mutual defended HCC in the Henney action. On January 19, 2011, Henney's claims against HCC were dismissed as settled [DE #19-6]. The case proceeded to trial against Henderson, and on January 25, 2011, the jury found Henderson liable for Henney's death and awarded damages of approximately $4 million [DE #19-11]. Canal has not contributed or reimbursed Liberty Mutual for the cost of defending HCC against the claims asserted in the Henney Action. As a result, Liberty Mutual filed this action, alleging that it spent $415,544.45 to defend HCC, as well as costs which have since been incurred. Specifically, LM and Liberty Mutual seek a declaration that Canal has a duty to defend HCC for the claims asserted in the Henney Action, a declaration that the LM Policy and the Liberty Mutual Policy are excess to the Canal Policy, an order requiring Canal to reimburse Liberty Mutual for all of the defense costs and expenses paid by Liberty Mutual in defending the Henney Action, along with interest on those amounts, as well as its costs and attorney's fees.

On January 12, 2012, LM and Liberty Mutual filed their motion for summary judgment. They argue that Liberty Mutual has paid $421,925.51 in attorneys' fees and costs in defending the claims against HCC, not including interest. They move for judgment against Canal for that amount,

plus prejudgment interest [DE #19].  Canal also filed a motion for partial summary judgment on January 12, 2012 [DE #21].  While Canal concedes that it is liable for twenty-five percent of the valid defense costs and expenses incurred in the defense of HCC between June 7, 2010, the date of HCC's tender, and January 19, 2011, it seeks partial summary judgment on the remainder of Liberty Mutual's claims.

## II.    SUMMARY JUDGMENT STANDARD

Rule 56(a) entitles a moving party to summary judgment if that party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(c)(1) further instructs that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion" by citing to the record or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The "moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008).  The moving party may meet this burden by demonstrating the absence of evidence concerning an essential element of the nonmovant's claim on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has satisfied its burden, the nonmoving party msut "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, it must produce specific facts showing that a genuine issue remains. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000).  If, after reviewing the record in its

4

entirety, a rational fact finder could not find for the nonmoving party, summary judgment should be granted. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

The interpretation of an insurance policy is a question of law, rendering it appropriate for summary judgment. *See Stone v. Kentucky Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809, 810-11 (Ky. App. 2000). The terms of an insurance policy will be given their plain and ordinary meaning and when the terms of the policy are clear and unambiguous, they must be enforced as drafted. *City of Louisville v. McDonald*, 819 S.W.2d 319, 320-21 (Ky.App. 1991); *Osborne v. Uniguard Indem. Co.*, 719 S.W.2d 737, 740 (Ky. App. 1986). Based on the "reasonable expectation doctrine, ambiguous terms in an insurance contract must be interpreted in favor of the insured's reasonable expectations and construed as an average person would construe them . . . Insurance policies should be construed according to the parties' mutual understanding at the time they entered into the contract, with this mutual understanding to be deduced, if at all possible, from the language of the contract itself." *Hugenberg v. West American Ins. Co.*, 249 S.W.3d 174, 185-86 (Ky. App. 2006).

## III.   ANALYSIS

Insurers have an obligation to defend if the complaint contains any allegation "which potentially, possibly or might come within the coverage of the policy." *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001)(quoting *Brown Found.*, 814 S.W.2d at 279). An

insurance company must decide at the outset of the litigation whether or not a defense is required. *Brown Found.*, 814 S.W.2d at 279.  An insurer who believes coverage is unwarranted may choose to defend the party anyway and preserve its rights to challenge the coverage at a later date through a reservation-of-rights letter.  *Aetna Cas. & Surety v. Kentucky*, 179 S.W.3d 830, 841 (Ky. 2005). However, if the insurer elects not to defend the party and it turns out that the insurer should have done so, the insurer will be liable for "all damages naturally flowing from" the failure to provide a defense.  *Id*. (*Eskridge v. Educator and Executive Insurers, Inc.*, 677 S.W.2d 887 (Ky. 1984).

Canal chose not to defend HCC.  The complaint in the Henney Action contained several counts against HCC.  Many of the claims against HCC alleged that it was vicariously liable for the acts of Henderson and/or that HCC and Henderson were engaged in a joint enterprise and should be held jointly and severally liable for the plaintiff's damages.  A single claims alleged that HCC independently, negligently, recklessly, or knowingly overloaded Henderson's dump truck.  In order to determine which insurance policy provided primary coverage for these claims, it is necessary to review the policies at issue.

## A.     THE POLICIES

In a contest between two insurers, "the liability for a loss should be determined by the terms of the respective policies.  *Standard Fire Ins. Co. v. Empire Fire & Marine Ins. Co.*, 234 S.W.3d 377, 379 (Ky. App. 2007)(internal citations and quotations omitted).  The relevant provisions of each policy are set forth below.

### 1.     The Liberty Mutual Auto Policy

The Liberty Mutual Auto Policy was issued to HCC for the period April 1, 2008 to April 1, 2009.  It provides a combined single limit of liability coverage of $1 million dollars.  This policy

6

provides that it shall pay all sums that HCC must pay as damages "caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'." A "covered auto," under this policy, means "any auto" (including non-owned autos). The policy also contains an exclusion for damages caused by the handling of property.

In the Other Insurance portion of the policy, it provides as follows:

**Other Insurance**

a.      For any covered "auto" you own, the Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance . . . .

\* \* \* \*

b.      When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all Coverage Forms and policies covering on the same basis.

[DE#21-4].

## 2.      The LM CGL Policy

The LM Commercial Liability Insurance policy was issued to HCC for the period April 1, 2008 to April 1, 2009. This policy agrees to cover certain damages to which the insurance applies and contains a $1 million limit per occurrence. It is a standard CGL policy which provides that it shall pay all sums that HCC must pay as damages because of "bodily injury" caused by an "occurrence" within the policy period. There is an exclusion for bodily injury "arising out of the ownership, maintenance, use or entrustment to others of any . . .'auto' owned or operated by or rented or loaned to any insured." The Other Insurance provision in this policy provides that the

7

policy shall be excess over any other insurance "[i]f the loss arises out of the maintenance or use of 'autos' to the extent not subject to Exclusion g. of Section I- Coverage A -Bodily Injury and Property Damage Liability" [DE #19-8].

### 3.   The Canal Auto Policy

Canal issued a business auto policy to Henderson for a policy period of June 7, 2008 to June 7, 2009 [DE #21-3].  Due to the requirement in the Hauling Contract, Henderson also purchased an endorsement whereby HCC was named as an additional Designated Insured.  The Canal Policy provides coverage for damages for bodily injury "resulting from the ownership, maintenance or use of a covered 'auto.'" There is no dispute that Henderson's dump truck, which was involved in the accident that was the subject of the Henney Action, was a covered auto under this policy.

The Other Insurance provision of the Canal Policy provides that the coverage is primary for any covered auto "you own" and is excess for any covered auto "you don't own."  "You" is defined as the named insured, Henderson.  However, by way of a Trucker's Endorsement, the policy provides that if the covered auto (i.e., Henderson's dump truck), is "being used or maintained pursuant to any lease, contract of hire, bailment, rental agreement, or any similar contract or agreement," the insurance to "you" (i.e. Henderson) shall be excess over any other insurance [DE #21-3]

### B.   CORRESPONDENCE BETWEEN THE PARTIES

On October 31, 2008, Canal received notice of the accident and began its investigation.  On April 6, 2009, Rose Penberthy of Liberty Mutual advised Canal's adjuster that Liberty Mutual insured HCC and that Henderson was hauling a load of asphalt for Hinkle at the time of the accident [DE #21-6].  On April 20, 2009, an attorney for Henney's estate sent a demand letter to both Henderson and Hinkle and offered to settle the claim in full for $3 million.

On June 5, 2009, Canal's counsel advised Liberty Mutual that Canal had determined that no coverage was afforded to HCC under the Canal policy because there was no evidence that HCC was vicariously liable for Henderson's conduct.  However, even if there were such a claim, it appeared that the LM Auto Policy and the Canal policy were co-primary and therefore, pro-rata allocation was required under the policies' Other Insurance Clauses.  Canal also advised Liberty Mutual that it had responded to the Estate's $3 million demand by advising that Canal's Policy limit was only $1 million [DE #21-7].

On June 29, 2009, the Estate's attorney emailed Liberty Mutual's new adjuster to advise her that the Estate would pursue non-auto theories of liability against HCC, including loading, unloading, joint venture and conspiracy to violate state and federal transportation safety laws [DE #21-8].  Again, on August 19, 2009, the Estate's attorney advised Liberty Mutual that the complaint would contain allegations not related to transportation [DE #21-9].

The Estate's suit was filed on October 28, 2009 [DE #1-1].  On November 6, 2009, Liberty Mutual's adjuster wrote to Canal's attorney in an attempt to tender HCC's defense and indemnification to Canal [DE #21-10]. By letter dated January 6, 2010, Canal's counsel advised that Canal would evaluate what duties may be owed by Canal to HCC based on the allegations in the Estate's complaint [DE #21-11].  On March 29, 2010, Canal advised Liberty Mutual that it had not received a request by HCC to tender the defense and indemnification to Canal and that such a duty is non-delegable.  Canal further advised that should HCC make such a demand under the Canal policy, it would be happy to work with Liberty Mutual on their shared obligation [DE #21-12].

Then, on June 7, 2010, Canal received a letter from HCC's personal attorney, Clark Keller, who formally tendered the defense and indemnification of HCC's claims to Canal at that time [DE

#21-13].  On June 10, 2010, Canal wrote HCC's attorney and agree that HCC was an additional insured on the Canal Policy by virtue of the Designated Insured Endorsement.  However, Canal advised HCC that coverage under the Canal policy was limited to vicarious liability claims against HCC arising out of Henderson's operation of the truck [DE #22-1].

By letter of July 9, 2010, Canal reiterated its acceptance of HCC's tender of defense on a co-primary basis with Liberty Mutual: "Further, assuming that Liberty Mutual is providing Hinkle with a defense in this litigation, we will be glad to discuss a cost-sharing agreement for Hinkle's defense as of June 7, 2010, with it.  If you are authorized by Liberty Mutual to negotiate on its behalf as to the terms of the cost sharing agreement, please also advise us immediately" [DE #22-2].  Canal received no further communications from HCC or Liberty Mutual regarding a cost-sharing agreement.  Canal was not consulted regarding choice of defense counsel, nor was Canal provided a single invoice for HCC's defense costs and expenses until after this litigation commences.  Furthermore, LM, the issuer of the LM CGL Policy, never contacted Canal during the pendency of the Estate action and Canal was never advised that LM was paying some part of HCC's defense costs until after the Complaint in this case was filed.

## C.   CANAL HAD THE PRIMARY DUTY TO DEFEND HCC

It is well established in Kentucky that whether an insurer has a duty to defend is determined by the allegations contained in the complaint.  *Brown Found.*, 814 S.W.2d at 279.  Thus, an insurer must "defend any suit in which the language of the complaint would bring it within the policy coverage."  *Id*. at 279.

Canal concedes that the claims made against HCC in the Henney action triggered a duty to defend on the part of Canal based on the policy issued to Henderson.  However, Canal argues that

10

both Liberty Mutual's Auto Policy and LM's CGL Policy were also triggered by the claims made against HCC in the Henney action.  Thus, the question for the Court is the proper application of various provisions of each policy in order to determine which insurers were primary, if any, and which were excess, if any.

Pursuant to the requirement in the Hauling Contract, Henderson purchased the "Designated Insured" endorsement in conjunction with the Canal Policy to have HCC added as an additional insured.  This endorsement states: "This endorsement identifies person(s) or organization(s) who are 'insureds' under the Who Is An Insured Provision of the Coverage Form" and lists "Hinkle Contracting" as an "insured" [DE #21-3, p. 114]  As a result, HCC is an insured of the Canal Policy pursuant to this endorsement and is entitled to coverage for all claims "resulting" from the "use" of a covered auto.

While Canal argues that the certain claims in the Henney Action including negligent overloading, joint enterprise and civil conspiracy claims (the "overloading claims") do not result from the "use" of Henderson's auto, the Court disagrees.  Kentucky courts have construed terms "resulting from" or "arising from" the use of an auto very broadly.  Specifically, courts look to whether the claim for which a party is seeking coverage was "causally connected" to the use of the auto.  *See Hugenberg*, 249 S.W.3d at 187; *Dodson v. Key*, 508 S.W.2d 586, 589-90 (Ky.App. 1974); *Hartford Ins. Cos. of America v. Kentucky School Boards Ins. Trust*, 17 S.W.3d 525, 527 (Ky.App. 1999); *Asher v. Unarco Material Handling, Inc.*, 2011 WL 42999 (E.D.Ky 2011); *Johnson v. Service Merchandise Co.*, 327 F.Supp.2d 735, 737 (E.D.Ky. 2004).  Here, there would be no cause of action for the overloading claims but for the fact that Henderson ran a stoplight and struck Mr. Henney's vehicle.  Under the terms of the policy, Canal had a duty to defend any claim in the Henney Action

11

which even potentially alleges a bodily injury "resulting from" the "use" of a covered auto. Thus, all of the claims asserted against HCC in the Henney Action "resulted from" the "use" of Henderson's auto.

The Other Insurance provision in Liberty Mutual's CGL Policy now comes into play. It specifically excludes coverage for bodily injury "arising out of" the "ownership, maintenance, use or entrustment to others" of any "auto" owned or operated by or rented or loaned to any insured. [DE #21-3 p.67] This exclusion, however, does not apply because the dump truck was not owned or operated by HCC or any insured of the CGL Policy. As a result, the Other Insurance provision of the CGL Policy applies. It provides that, to the extent it affords coverage to HCC for a claim "arising out of the use of a "auto[]", it provides excess coverage to all other available insurance "whether primary, excess, contingent or on any other basis." [DE #21-5 p. 74] Because the Court finds that the overloading claims were "auto claims," then Canal and Liberty Mutual were insuring the same risk. As a result of the Other Insurance provision in the CGL Policy, the CGL Policy is excess to the Canal Policy.

Turning next to the LM Auto Policy, the Court notes that its Other Insurance provision is identical to the Canal Policy. Both policies provide:

> For any covered "auto" you own, this Coverage Form provides primary insurance.
> For any covered auto you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance.

[DE ##, 19-7, p. 13, 21-3p. 49]. Under both policies, "you" is defined as the "Named Insured." The "Named Insured" of the LM Auto Policy is HCC. Clearly, the LM Auto Policy provides primary coverage for autos owned by HCC and excess coverage for autos not owned by HCC. Because there is no dispute that the truck involved in the accident was owned by Henderson, the LM Auto Policy

12

is excess to the Canal Policy. This is consistent with Kentucky law, which has recently held on two occasions that the owner of a vehicle shall provide primary insurance irrespective of the "other insurance" provisions in the competing policies. *See Kentucky Farm Bureau Mut. Ins. Co. v. Shelter Mut. Ins. Co.*, 326 S.W.3d 803 (Ky. 2010); *Progressive Max Ins. Co. v. National Car Rental Systems, Inc.*, 329 S.W.3d 320 (Ky. 2011).

Canal's argument that the Trucker's Endorsement to its auto policy renders its coverage co-excess fails. The relevant provision of the Trucker's Endorsement provides:

> Regardless of the provisions of paragraph a. above, in the event the "auto described in this policy is being used or maintained pursuant to any lease, contract of hire, bailment, rental agreement, or any similar contract or agreement, either written or oral, expressed or implied, the insurance afforded you shall be excess insurance over any other insurance.

[DE #19-3, p.78]. Importantly, this provision only applies to "you," defined as the "Named Insured," which is Henderson. By its own terms, it does not apply to HCC as an additional designated insured. Instead, it only applies when Henderson, the "Named Insured," seeks coverage from Canal when his own auto is being used or maintained "pursuant to any lease, contract . . ." and Henderson has no other available coverage to him. The Trucker's Endorsement is simply not applicable to HCC in this case.

Even if the "Other Insurance" provision in the Trucker's Endorsement applied to coverage afforded an additional insured such as HCC, the Hauling Contract between Henderson and HCC does not constitute "a lease, contract for hire" or other similar agreement. The Hauling Contract between Henderson and HCC provides that Henderson is an independent contractor of HCC and that HCC will tender construction materials to Henderson for delivery to assigned locations. Henderson is paid based on the weight of the material to be hauled, and is responsible for furnishing all the

13

necessary equipment and personnel to comply with the Hauling Agreement, not just a designated truck.  Furthermore, Henderson was responsible for all maintenance and insurance regarding his equipment and his employees.  HCC did not designate or require any particular truck or employee to perform the services required by the Hauling Contract.  HCC had not right to exercise any control over Henderson's means of complying with the Hauling Contract, other than to require Henderson to take the "shortest practicable route" for each delivery.  For these reasons, the Hauling Contract was not a "contract to hire" the truck or any other type of agreement contemplated by the Trucker's Endorsement.  It was simply an independent contract arrangement to hire Henderson to perform hauling services for HCC.  This holding is supported by holdings in *Liberty Mutual Fire Ins. Co. V. Canal Ins. Co.*, 177 F.3d 326 (5th Cir. 1999); *Liberty Mutual Fire Ins. Co. v. Canal Ins. Co.*, 50 F.Supp. 2d 591 (S.D. Miss. 1998); *Liberty Mutual Fire Ins. Co. v. Canal Ins. Co.*, 1997 WL 786760 (N.D. Miss. 1997), where the courts found that such hauling and contract services were not contracts to "hire" the truck, but instead service contracts.  For these reasons, the LM Auto Policy is also excess to the Canal Policy.

Based on these findings, Canal owed a primary duty to defend HCC against the claims asserted in the Henney Action.  Under Kentucky law, Canal is responsible for "all damages naturally flowing from the failure to provide a defense.  This includes 'damages for reimbursement of defense costs and expenses." *Aetna Cas. & Surety Co.*, 179 S.W.3d at 841 (internal citations and quotations omitted).  Thus, Liberty Mutual is entitled to be fully reimbursed for the costs it paid defending HCC against the claims asserted in the Henney Action.

### D. CANAL'S DUTY TO DEFEND BEGAN AT INCEPTION OF THE CLAIMS AGAINST HCC

The parties dispute when Canal's obligation to defend HCC began.  Although Canal was aware of the Henney's claims against Henderson and HCC prior to the filing of the Henney Action, it was advised of Liberty Mutual's intent to tender defense to Canal in the spring of 2009 [DE #20-1, p.1].  After the suit was filed, Liberty formally tendered defense of HCC to Canal [DE #20-1, p.8].  Canal never responded.  It was months later that Canal advised Liberty Mutual that it would not accept the tender and that it would only accept a tender from HCC directly [DE #20-1, p. 12].  Shortly thereafter, counsel for HCC wrote a "formal tender of the defense Canal owes to HCC." [DE #20-1, p.13]  Canal responded that it would accept HCC's tender of defense, but since Liberty Mutual was paying the defense costs, it would negotiate a cost-sharing arrangement [DE #20-1, p.29-31].  Apparently, no such arrangement was ever reached.  Based on this correspondence, Canal argues that it is not liable for any defense costs incurred prior to June 7, 2010, the date that HCC's counsel tendered the defense to Canal.

Essentially, Canal is arguing that the previous tenders were made by Liberty Mutual on behalf of HCC were ineffective.  There is simply no Kentucky caselaw directly in support of Canal's argument.  In fact, Kentucky generally recognizes that the insurer is an agent of the insured during the course of litigation or anticipated litigation. *See e.g. Asbury v. Beerbower*, 589 S.W.2d 216 (Ky. 1979)(holding that the attorney-client privilege extends to communications made by an insured to their insurer upon the recognition that the "insurer as the agent" of the insured will transmit the communication to an attorney).  Canal had notice of the claims against HCC, but wishes to avoid its defense obligations based on the fact that Liberty Mutual wrote the tender letter on HCC's behalf.  There is no support for Canal's position, particularly in light of the fact that Canal waited months to inform Liberty Mutual that it would not accept Liberty's tender and that it would only accept a

15

tender from HCC directly.  Canal then agreed to accept HCC's tender of defense, but then told HCC that since Liberty Mutual was paying the defense costs for HCC, it would negotiate a cost-sharing agreement with Liberty Mutual, which was never accomplished.

However, even if this tender by Liberty Mutual was somehow ineffective, Kentucky law provides that an insurance company cannot avoid its obligations to an insured on the basis of a failure to notify the insurer of the claim unless the insurer can prove that it was prejudiced by the delay.  *See Jones v. Bituminous Cas. Corp.*, 821 S.W.2d 798, 801-03 (Ky. 1991).  "Kentucky's general pronouncement on late notice is very persuasive authority that Kentucky would continue to place the burden on the insurer to show prejudice due to late notice rather than assuming prejudice as many other jurisdictions have for pre-tender defense costs."  *Travelers Property Cas. Co. of America v. Hillerich &Bradsby Co., Inc.*, 598 F.3d 257 (6th Cir. 2010).  Because Canal was on notice of the claims against HCC since April 2009, it cannot show any prejudice.  Canal had every opportunity to assume the defense of HCC from the filing of the complaint to the conclusion of the lawsuit.  Accordingly, Liberty Mutual is entitled to full contribution from Canal for all reasonable defense costs it paid in defense of HCC.

###   E.   DEFENSE COSTS

Liberty Mutual seeks defense costs in the amount of $421,925.51, plus prejudgment interest.  Liberty Mutual has tendered invoices, legal bills, cancelled checks, and affidavits to support these costs [DE #20] . The parties agree that the burden is on Liberty Mutual to prove these costs, although Liberty Mutual also contends that it is entitled to presumption of reasonableness due to Canal's decision not to participate in the defense.  Liberty Mutual argues that Canal should not be allowed to refuse to participate, and then to challenge the reasonableness of the defense costs actually

16

incurred by the insurer actually participating.  The Court agrees.

Furthermore, in review of the defense costs, the Court finds that defense costs incurred were indeed reasonable.  The rates charged by Baker Kriz, $100 per hour for attorney work and $60 per hour for paralegal work, are certainly reasonable rates in this jurisdiction.  To the extent that Liberty Mutual consulted with other attorneys charging a higher rate or experts, the Court has reviewed these expenses and finds that they are also reasonable in light of the facts of the case.  Thus, Liberty Mutual is entitled to recover the entire amount of its defense costs, $421,925.51.

### F.    PREJUDGMENT INTEREST

Finally, Liberty Mutual seeks to recover prejudgment interest on each defense payment.  In Kentucky, prejudgment interest can be awarded in three circumstances: (1) where there is statutory authority; (2) where there is a contract allowing prejudgment interest; and (3) when the damages are liquidated.  *See Nucor Corp. v. General Electric Co.*, 812 S.W.2d 136 (Ky. 1991).  When the award of damages is liquidated, then prejudgment interest is required as a matter of right.  *Id*. at 141.  A "liquidated amount" is one that can be determined by simple calculation, can be determined with reasonable certainty, can be determined pursuant to fixed rules of evidence or can be determined by well-established market values.  *3D Enterprises Contracting Corp. v. Louisville and Jefferson County Metrop. Sewer Dist.*, 174 S.W.3d 440, 450 (Ky. 2005)(internal citations omitted).

Here, the defense costs incurred by Liberty Mutual are liquidated under Kentucky law.  The amounts were invoiced, tendered to, and paid by Liberty Mutual pursuant to its insurance contract with HCC.  As a result, prejudgment interest at 8% per annum, runs on each payment made by Liberty Mutual from the date of the payment until the date of the judgment.  KRS 360.010; *Pursley v. Pursley*, 144 S.W.3d 820, 828, 29 (Ky. 2004)

## IV.    CONCLUSION.

For the reasons set forth above, Canal was HCC's primary insurer and Liberty Mutual and LM were excess insurers. Liberty Mutual is entitled to full reimbursement from Canal for all defense costs it paid in defense of HCC, including prejudgment interest at 8% per annum. Accordingly, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1)    Liberty Mutual's motion for summary judgment [DE #19] is **GRANTED**, and summary judgment will be entered in favor of Liberty Mutual for the amount $421,925.51 plus prejudgment interest;

(2)    Canal's motion for partial summary judgment [DE #20] is **DENIED**;

(3)    the parties' joint motion to amend the scheduling order [DE #31] is **DENIED AS MOOT**;

(4)    the pretrial conference currently set for April 19, 2012 and the bench trial currently set for May 15, 2012 are **SET ASIDE;** and

(5)    **WITHIN TEN DAYS OF ENTRY OF THIS ORDER**, Liberty Mutual shall submit a proposed Judgment, including amounts for prejudgment interest.

This March 22, 2012.



**Signed By:**

***Karl S. Forester*** $KSF$

**United States Senior Judge**